UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
GREENEVILLE DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | NO. 2:12-CR-118 |
| | ) | 2:13-CR-21 |
| vs. | ) | 2:14-CV-00057-RLJ |
| | ) | |
| CLAYTON CARROLL OWENBY, | ) | |
| | ) | |
| Defendant | ) | |
| | ) | |

**MEMORANDUM OPINION**

Defendant Clayton Carroll Owenby ("Owenby" or "petitioner") has filed a motion to vacate, set aside or correct his sentence pursuant to 28 U.S.C. § 2255 [Doc. 323]. He subsequently filed an amended motion to vacate [Doc. 344]. The United States has responded to the motion, objecting to Owenby's requested relief. [Doc. 333, 382]. The matter is now ripe for the Court's resolution.

I.    **BACKGROUND**

On December 11, 2012, Owenby was indicted for a conspiracy to distribute oxycodone in violation of 21 U.S.C. § 841(a)(1). [Case No. 2:12-cr-118, *Indictment*, Doc. 3]. While incarcerated pending the disposition of that charge, Owenby placed a series of phone calls to his mother, Kathleen Garret, and made numerous threats directed towards the lead investigator involved in the drug trafficking investigation. As a result, another case was filed against him (Case No. 2:13-cr-21), in which he was charged with (1) threatening to cause bodily injury to a witness with the intent to retaliate in violation of 18 U.S.C. § 1513(b)(1); (2) engaging in intimidating and threating conduct against a witness with the intent to influence or prevent the testimony of a witness in

1

violation of 18 U.S.C. § 1512(b)(1), and (3) conspiring to commit such offenses to retaliate in violation of 18 U.S.C. § 371. [Case No. 2:13-cr-21, Doc. 1, *Indictment*].[1]

Owenby entered into a plea agreement with the Government, resolving both of these indictments. As part of the plea agreement, Owenby stipulated to the facts necessary to prove each of the offenses to which he pled guilty. Owenby stipulated that he conspired to distribute 176,240 milligrams of oxycodone, which equated to 1,180 kilograms of marijuana [Doc. 141, *Plea Agreement,* pg. 3, 6]. Owenby also stipulated that he made numerous phone calls to his mother, co-defendant, Kathleen Garrett, wherein he threatened to "take out" or "engage in … conduct which would cause bodily injury …" to the T.B.I. Special Agent handling the case. [Doc. 141, *Plea Agreement,* pg. 6-8]. He admitted that he told Garrett that the TBI Agent "need[s] to be took [sic] care of, you know what I'm saying." [Doc. 141, *Plea Agreement,* pg. 7]. He also told her that "if I'm gonna do life in prison, then I'm gonna be all over the f----ing nationwide news for taking these son of bitches out. So you do what you have to do." *Id.*

As part of his plea agreement, Owenby waived filing a direct appeal except for a sentence imposed above the sentencing guideline range as determined by the District Court or "above any mandatory minimum sentence deemed applicable by the district court, whichever is greater" and waived filing any pleadings pursuant to 28 U.S.C. § 2255 except for "claims of ineffective assistance of counsel or prosecutorial misconduct not known to the defendant by the time of the entry of judgment." [Doc. 141, *Plea Agreement,* pg. 11].

On May 21, 2013, the District Court held a change of plea hearing. At that hearing, the District Court asked Owenby if he had ever been treated for any mental illness, to which Owenby answered "about twenty years ago for bipolar." [Doc. 331, *Transcript,* pg. 5]. Owenby also

---

[1] Otherwise noted, all future record citations will be to Case No. 2:12-cr-118.

advised the Court that he believed that his lawyer was fully aware of all the facts on which the charges were based. [Doc. 331, *Transcript*, pg. 6-7]. The Assistant U.S. Attorney read into the record the agreed factual basis from the signed plea agreement that supported his plea as to both the conspiracy charge and the obstruction of justice charge. When asked by the District Court whether he agreed with the Government's summary of his conduct, he responded that he did [Doc. 331, *Transcript*, pg. 15]. Owenby also advised the Court that he understood his direct appeal and his § 2255 waiver contained in the plea agreement. Owenby then pled guilty to both offenses and stated that he was pleading guilty because he was, in fact, guilty of committing both of those offenses. [Doc. 331, *Transcript*, pg. 15-16]. The Court then found Owenby's change of plea to be knowingly, intelligently, and voluntarily made, and it accepted the plea.

United States Probation prepared a Presentence Report ("PSR") detailing Owenby's background including his treatment for mental health issues and his criminal history. (PSR ¶ 79-84). It reported details of his physical condition, such as the multiple medical procedures he had for back pain, including the epidurals and nerve blocks he received. It also reported the numerous ear surgeries he had when he was a child, and it summarized the medical records from his various healthcare providers. (PSR ¶ 80-83). In contrast to the allegations contained in his § 2255 motion, Owenby actually denied suffering from any current mental health issues in his discussion with the U.S. Probation officer. (PSR ¶ 83). Based upon his criminal history and his acceptance of responsibility, Probation calculated his total offense level to be 31, his criminal history as category II, with a corresponding guideline range of 121 to 151 months. Owenby did not object to the contents of the PSR [Doc. 207].

On September 5, 2013, Owenby's counsel announced to the Court that he had reviewed the PSR with Owenby and that there were no objections [Doc. 332, *Transcript*, pg. 3-4]. For

both the conspiracy to distribute oxycodone charge, (Case No. 2:12-cr-118), and the obstruction of justice charge, (Case No. 2:13-cr-21), the Court sentenced Owenby to a concurrent 135-month term of imprisonment [Doc. 223, *Judgment*]. The District Court advised Owenby that he had the right to appeal his sentence and that a "notice of appeal must be filed within 14 days of entry of the judgment. If you request, and so desire, the Clerk of the Court can prepare and file the notice of appeal for you." [Doc. 332, *Transcript,* pg. 10]. Owenby did not file a direct appeal. Instead, on February 28, 2014, he timely filed his initial § 2255 motion [Doc. 323] and an amended motion on May 5, 2015 [Doc. 334].

## II. ANALYSIS

### A. Standard of Review

The Sixth Amendment provides, "[i]n all criminal prosecutions, the accused shall enjoy the right ... to have the Assistance of Counsel for his defence." U.S. Const. amend. VI. This right extends beyond the mere presence of counsel to include "reasonably effective assistance" of counsel. *Strickland v. Washington*, 466 U.S. 668, 687–88 (1984). To establish a claim of ineffective assistance, Owenby must demonstrate two essential elements: (1) that counsel's performance was deficient, that is, below the standard of competence expected of attorneys in criminal cases; and (2) that counsel's deficient performance prejudiced the defense, i.e. deprived the defendant of a fair criminal proceeding, rendering the outcome of the proceeding unreliable. *Id*. at 687–88.

With regard to plea proceedings, Owenby must show that but for counsel's deficient performance, he would not have pleaded guilty. *Hill v. Lockhart*, 474 U.S. 52, 58–59 (1985). To demonstrate a reasonable probability that he would have gone to trial, a defendant is required to present evidence apart from a lone assertion that but for counsel's error he would have pleaded not guilty and gone to trial. See *Parry v. Rosemeyer*, 64 F.3d 110, 118 (3rd Cir. 1995). Under *Strickland*,

review should be deferential and maintain a strong presumption in favor of finding counsel's conduct within the wide permissible range of reasonable professional assistance. *Strickland*, 466 U.S. at 689.

**B.     Owenby's § 2255 Claims for Relief**

In his § 2255 motion, Owenby's claims are confusingly pled and difficult to decipher.  As the Court discerns, Owenby raises the following ineffective assistance of counsel claims: (1) counsel failed to file a direct appeal; (2) counsel failed to obtain his mental health records, claiming that he had a "diminished mental capacity," "bipolar disorder and multiple personality disorder" and was developmentally disabled, none of which was presented to the District Court, [Doc. 323, *Initial Motion,* pg. 2; Doc. 334, *Amended Motion,* pg. 3, 8, 13]; (3) counsel failed to explain the evidence against him; [Doc. 323, *Initial Motion,* pg. 2]; (4) counsel failed to explain the appellate or §2255 waiver contained in the plea agreement [Doc. 334, *Amended Motion,* pg. 10]; (5) counsel failed to challenge the drug quantity [Doc. 323, *Initial Motion,* pg. 3];   (6) "prosecutorial manipulation of the charges" [Doc. 334, *Amended Motion,* pg. 5, 15]; (7) that his guilty plea "was false because I don't understand so much" [Doc. 334, *Amended Motion,* pg. 15]; (8) "ineffective [assistance of] counsel - duress or coercion"[2] [Doc. 323, *Initial Motion*, pg. 6]; (9) pretrial incarceration conditions [Doc. 334, *Amended Motion*, pg. 17]; and (10) "Minimal role in the offense" [Doc. 334, *Amended Motion,*, pg. 6].

**1.     Claim One - Ineffective assistance of counsel for failure to file a direct appeal.**

Owenby contends in his amended § 2255 motion that his attorney knew he wished to file an appeal, but that his counsel refused to assist him.  He claims that his counsel still refused to

---

[2] The Court is unsure as to exactly what Owenby means by "duress or coercion," as he merely writes this as a ground for review without providing any details or explanation. [Doc. 323, pg.6]

help after Owenby's wife contacted him. In response to that allegation, the United States contends that Owenby fails to present any evidence that he actually requested his attorney to file an appeal, which counsel then disregarded. Further, it argues, Owenby was clearly aware of the deadline to file his appeal but fails to explain why he never personally contacted the Clerk's Office to request assistance with the filing of any appeal.

If an attorney fails to file an appeal after being specifically instructed to do so by a defendant, the defendant is entitled to an appeal without regard to a showing that the appeal would actually have merit, that is, without regard to a showing of actual prejudice. *Roe v. Flores-Ortega*, 528 U.S. 470, 477 (2000); *accord Ludwig v. United States*, 162 F.3d 456, 459 (6th Cir. 1998). Absent proof that a defendant explicitly directed counsel to file a notice of appeal, a court considers whether the attorney "consulted with [petitioner] about an appeal" and made "a reasonable effort to discover [his] wishes." *Flores-Ortega*, 528 U.S. at 478, 487. In this particular case, the United States initially argued that Defendant has failed to allege that he directed his attorney to file an appeal. But Owenby specifically states in his motion that his attorney "knew [he] wanted to file an appeal and that [counsel] was not gonna help [him] do that." [Doc. 344, pg. 9]. Further, he alleges that his wife called counsel's office concerning the appeal, and that counsel still refused to assist in the appeal.

Both components of the Strickland test apply where the asserted attorney error is the failure to file an appeal. *Flores-Ortega*, 528 U.S. at 477. In assessing the claimed error in light of the deficient-performance prong of the Strickland standard, the Supreme Court has instructed:

> We have long held that a lawyer who disregards specific instructions from the defendant to file a notice of appeal acts in a manner that is professionally unreasonable. See *Rodriquez v. United States*, 395 U.S. 327, 89 S.Ct. 1715, 23 L.Ed.2d 340 (1969); cf. *Peguero v. United States*, 526 U.S. 23, 28, 119 S.Ct. 961, 143 L.Ed.2d 18 (1999) ("[W]hen counsel fails to file a requested appeal, a defendant is entitled to [a new] appeal without showing that his appeal would likely

6

have had merit"). This is so because a defendant who instructs counsel to initiate an appeal reasonably relies upon counsel to file the necessary notice. Counsel's failure to do so cannot be considered a strategic decision; filing a notice of appeal is a purely ministerial task, and the failure to file reflects inattention to the defendant's wishes.

*Id.* Thus, an attorney who ignores his client's explicit direction to file an appeal has rendered an inferior and deficient performance. However, "a defendant's actual 'request' is still a critical element in the Sixth Amendment Analysis. The Constitution does not require lawyers to advise their clients of the right to appeal." *Id.*; *see also Regalado v. United States*, 334 F.3d 520, 524-526 (6th Cir. 2003) (failure to file an appeal is not ineffective assistance of counsel where attorney was not specifically instructed to do so).

Under Rule 8 of the Rules Governing Section 2255 Proceedings in the United States District Courts, the Court is to determine—after a review of the answer and the records of the case—whether an evidentiary hearing is required. A hearing is not required where the record conclusively shows that the Defendant is entitled to no relief, such as where "the defendant's allegations cannot be accepted as true because they are contradicted by the record, inherently incredible, or conclusions rather than statements of facts[.]" *Huff v. United States*, 734 F.3d 600, 607 (6th Cir. 2013) (citing *Arredondo v. United States*, 178 F.3d 778, 782 (6th Cir. 1999)). A defendant may, however, be entitled to an evidentiary hearing when he presents "a factual narrative of the events that is neither contradicted by the record nor inherently incredible and the government offers nothing more than contrary representations to contradict it[.]" *Id.* at 607 (quoting *Valentine v. United States*, 488 F.3d 325, 334 (6th Cir. 2007) (internal quotation marks omitted)).

In this case, Owenby alleges that he told his counsel to file an appeal [Doc. 33, *Amended Motion*, pg. 9]. At the time of the filing of this motion on May 5, 2014, the government could challenge Owenby's specific allegations concerning an appeal with the testimony of his counsel,

7

Mr. Robert Dickert. However, Mr. Dickert died on June 12, 2016, leaving the government at a distinct disadvantage in presenting proof to contradict Owenby's assertions [Doc. 402-1]. The government has since filed a Supplemental Response indicating that "if the Court credits [Owenby's] assertion that counsel disregarded a timely request to appeal on [his] behalf, [he] should be granted a delayed direct appeal." [Doc. 402, pg. 3]. The government's response does not resolve the issue. It still requires the Court to address the credibility of Owenby's request and decide whether Owenby actually asked his counsel to appeal based on the pleadings. In other words, Owenby's credibility remains a central issue to his motion, which cannot be resolved by an examination of the pleadings alone. *See Pola v. United States*, 778 F.3d 525, 535 (6th Cir. 2015)("[W]hen the decision to conduct a § 2255 evidentiary hearing turns on credibility issues, then resolution on the basis of affidavits can rarely be conclusive....")(citations and quotations omitted).

An evidentiary hearing is necessary to address whether Owenby specifically requested his counsel to file an appeal.[3] Accordingly, the issue remains contested and an evidentiary hearing must be held. By separate order, the Court will refer this matter to the magistrate judge to conduct an evidentiary hearing and to file a report and recommendation as appropriate.

**2.      Claim Two - Ineffective assistance of counsel for failure to obtain his mental health records, claiming "diminished mental capacity."**

Owenby alleges that his counsel was ineffective for failing to obtain any of his mental health or medical records and presenting them to the Court [Doc. 334, pg. 8]. He specifically

---

[3] In *Campbell v. United States,* 686 F.3d 353 (6th Cir. 2012), Campbell alleged that he specifically instructed his counsel to appeal. "Although nothing in the record contradict[ed] Campbell's assertion that he affirmatively expressed to counsel his desire for an appeal, the government has not conceded the point. Because the resolution of this factual issue is pivotal to Campbell's claim for relief, the district court must conduct an evidentiary hearing to determine if Campbell in fact expressed the desire for an appeal as he now asserts." *Id.* at 360. The same is true in this case.

asserts that although he has "bipolar disorder," "split multiple personality disorder," and is considered "mildly" mentally handicapped, this information was not contained in the PSR. *Id.*

It is not clear what Owenby is arguing here. If he is claiming that his counsel should have argued that he suffered from "diminished mental capacity" during the commission of the offense entitling him to a downward departure under U.S.S.G. § 5K2.13, it is not availing. First, the PSR noted Owenby's reported diagnosis of both Bi-Polar Disorder and Multiple Personality Disorder, that he had received prior mental health counseling in Knoxville, Tennessee 20 years ago and at another mental health facility 19 years ago [PSR at ¶ 83]. Not only was it included in the PSR, Owenby himself advised the District Court that he had been diagnosed with bi-polar disorder twenty years prior [Doc. 331, *Transcript,* pg. 5-6]. But when he met with Probation regarding the preparation of the PSR, he claimed his "only current mental health issue [was] stress." [PSR at ¶ 83]. Owenby did not raise this as an issue in his conversations with the Probation Officer and did not object to the contents of the PSR.

In any event, Owenby would not have qualified for a downward departure under U.S.S.G. § 5K2.13. This Guideline provides that "[a] downward departure may be warranted if (1) the defendant committed the offense while suffering from a significantly reduced mental capacity; and (2) the significantly reduced mental capacity contributed substantially to the commission of the offense." Section 5K2.13 expressly forbids courts to depart downward under the Guidelines where "the facts and circumstances of the defendant's offense indicate a need to protect the public because the offense involved actual violence or a serious threat of violence." Owenby stipulated that he was guilty of "knowingly engaging in … conduct which would or did cause bodily injury to another person." [Doc. 141, *Plea Agreement,* pg. 2]. He threatened to "take out" the agent who

was responsible for the investigation into his drug trafficking. Section 5K2.13 does not apply by its own terms.

Owenby also contends that these records would have shown his limited intellectual functioning as he claimed he only had a third grade education. In contrast to that allegation, he advised the District Court, under oath, at the change of plea hearing that he actually completed the tenth grade. In fact, the PSR also indicates that the records from Cocke County High School, Newport, Tennessee indicate that he withdrew from the tenth grade. Thus, what he now represents in his § 2255 motion is inconsistent with his sworn testimony before the District Court and the evidence from the PSR.

Owenby cannot show any prejudice as a result of not having introduced these records at the sentencing hearing. His mental health history was before the Court and he does not now allege that it would reveal anything that was not already before the Court in the PSR. Owenby has not demonstrated that the result of the case would have been any different. *See Strickland*, 446 U.S. at 691. It is clear that his counsel was not ineffective in this regard. Accordingly, this claim is meritless and is therefore DENIED.

### 3. Claim Three - Ineffective assistance of counsel for failure to explain the evidence against Owenby.

Next, Owenby alleges that his trial counsel failed to explain the evidence against him as "it would take three hours [to explain] and [counsel said] he didn't have time." [Doc. 323, pg. 2]. He claims he was at the mercy of his attorney, who said it was in his best interest to plead guilty, and also avers that he "exaggerated" facts to law enforcement concerning his involvement in the conspiracy. [*Id.* at 14]. For the first time, Owenby now alleges he did not understand the evidence due to his mental incapacity.

Owenby entered a Plea Agreement in which he stipulated to the facts that supported the offenses to which he pled guilty. During his change of plea hearing, the Government detailed on the record its case against Owenby [Doc. 331, *Transcript,* pg. 10-15]. The Court specifically asked Owenby if he agreed with the Government's factual summary of his actions that supported his plea. Owenby advised the Court that he agreed with the Government's summary of what he did. *Id.* He further went on to testify under oath that he understood what he was pleading guilty to and was pleading guilty because he was, in fact, guilty. Owenby had every opportunity to inform the Court he did not understand the evidence against him at any time or that he otherwise disagreed with any of the recited facts. At no point has Owenby provided the Court with any basis as to why he is now asserting a position contradictory to his sworn testimony at his change of plea hearing. In fact, at the hearing, he advised the District Court that he believed his lawyer was fully aware of all the facts on which the charges were based [Doc. 331, *Transcript,* pg. 6-7]. He further advised the Court that he "told [his lawyer] everything [he knew] about these cases." [Doc. 331, *Transcript,* pg. 6]. Owenby is bound by his sworn testimony presented to the Court during his change of plea and sentencing hearings. *Blackledge v. Allison*, 431 U.S. 63 (1997). Finally, he does not allege that he would have chosen to proceed to trial otherwise. As a result, he has failed to provide any reasonable basis that this alleged error would have caused a different result. *See Strickland*, 446 U.S. at 691. Accordingly, this claim is meritless and is therefore DENIED.

**4.** **Claim Four - Ineffective assistance of counsel for failure to explain the appellate waiver contained in the plea agreement**.

Owenby next claims that he "knew nothing of waiving [his] right to file any motions or pleadings pursuant to 2255. Furthermore, at that time [he] did not know what a 2255 was." [Doc. 344, pg. 10]. This claim is incredible and is inconsistent with his prior sworn testimony before the Court in which he acknowledged he understood the waiver provisions contained in his plea

11

agreement. As noted, Owenby is bound by his sworn testimony before the Court. *Blackledge*, 431 U.S. 63. The appellate waiver was contained in Owenby's plea agreement and was discussed specifically during his plea hearing. In addition to the repercussions facing him for pleading guilty, the Court also highlighted the fact that the plea agreement contained an appellate waiver that extended to § 2255 motions. Owenby unambiguously and under oath testified that he understood that he was giving up his appellate rights. At no point did he inform the Court he was confused or hesitant about the waiver.

Indeed, the District Court asked Owenby the following:

> Mr. Owenby, do you understand that under the terms of the plea agreement in this case you are waiving your right to file an appeal, and any motions or pleadings, pursuant to 28 U.S.C. § 2255 except for ineffective assistance of counsel, prosecutorial misconduct, a change of law, or a sentence imposed that is higher than either the applicable guideline range, or any applicable mandatory sentence, whichever is greater? Mr. Owenby, did [your lawyer] explain to you that you were giving up those appellate rights?

[Doc. 331, pg. 17-18]. In response, Mr. Owenby stated, "Yes, Sir." [Doc. 331, pg, 18]. Owenby's self-serving claims are insufficient to overcome the strong presumption of truth afforded his plea agreement and sworn testimony in open court. *See United States v. Peterson*, 414 F.3d 825, 827 (7th Cir. 2005)("Judges need not let litigants contradict themselves so readily; a [§ 2255] motion that can succeed only if the defendant committed perjury at the plea proceedings may be rejected out of hand unless the defendant has a compelling explanation for the contradiction"). Accordingly, this claim is meritless and is therefore DENIED.

**5. Claim Five - Ineffective assistance of counsel for failure to dispute the drug quantity attributable to him.**

Owenby next asserts that counsel was ineffective for failing to dispute the drug quantity for which he was responsible. Owenby admitted, under oath, the amount of drugs attributable to him in his plea agreement. He has never sought to withdraw his guilty plea. He stipulated that

12

he was responsible for 176,240 milligrams of oxycodone, which is the equivalent of 1,180.81 kilograms of marijuana. Owenby does not even alleged what quantity should apply and does not seek any specific relief in this regard. His counsel behaved reasonably by not disputing the drug quantity since it was based on Owenby's own stipulation. He can show no prejudice in this regard. Accordingly, this claim is meritless and is DENIED.

6. **Claim Six - "Prosecutorial manipulation of the charges"** [Doc. 334, pg. 15];

Owenby alleges for the first time that the prosecutor engaged in misconduct by manipulating the charges against him. He asserts that "so much of the evidence isn't true," "the prosecutor made [him] out to be some big drug dealer that that [he] is not," and that "the prosecution made it look like [he] had a bad past and [he] had a lot of drug charges." [Doc. 334, pg. 15]. Owenby also notes, however, that he has "nothing against" the prosecutor, and that she was "just doing her job." [*Id.* at 16].

"To warrant relief under § 2255, 'a petitioner must demonstrate the existence of an error of constitutional magnitude which had a substantial and injurious effect or influence on the guilty plea or the jury's verdict.'" *Stines v. United States*, 571 F. App'x 384, 388 (6th Cir. 2014) (quoting *Griffin v. United States,* 330 F.3d 733, 736 (6th Cir.2003)). "For a habeas corpus motion to be cognizable under a claim of prosecutorial misconduct, the misconduct must be 'of sufficient significance to result in the denial of the defendant's right to a fair trial.'" *Marcusse v. United States*, 785 F. Supp. 2d 654, 663 (W.D. Mich. 2011) (quoting *Greer v. Miller,* 483 U.S. 756, 765 (1987) (citations omitted). "In order to satisfy the standard for prosecutorial misconduct, the conduct must be both improper and flagrant." *Broom v. Mitchell*, 441 F.3d 392, 412 (6th Cir. 2006).

13

Here, Owenby only makes generalized allegations concerning how the prosecutor described him and his role in the conspiracy. Owenby stipulated under oath to the evidence in this case; his current attempts to contradict it now are baseless. Furthermore, Owenby's criminal history that he claims the prosecutor exaggerated is detailed in the PSR with specific citations to each charge and each conviction. He made no objections to his criminal history as outlined in the PSR. [Doc. 207, *Notice of No Objections to PSR*]. Overall, Owenby points to no actual examples of misconduct, and the general allegations that he makes—even if true—are neither improper nor flagrant. He was only held accountable for the amount of drugs he admitted to distributing. He has failed to provide any basis to find that he was denied the right to a fair trial or due process. Accordingly, this claim is meritless and is therefore DENIED.

### 7. Claim Seven - That his guilty plea "was false because I don't understand so much"

Owenby claims his "guilty plea was false because [he does not] understand so much." [Doc. 334, pg. 15]. To the extent that Owenby is attempting to allege he was unable to enter into the guilty plea as a result of his mental condition, this argument is waived. It is well-established that if a defendant seeks to challenge the voluntariness and intelligence of a guilty plea on collateral review, the issue must first have been presented on direct appeal. *See Bousley v. United States*, 523 U.S. 614, 620 (1998) ("the voluntariness and intelligence of a guilty plea can be attacked on collateral review only if first challenged on direct review"); *see also Swain v. United States*, 155 F. App'x 827, 830 (6th Cir. 2005) ("Because [the defendant] did not raise it (or its equivalent) on direct review, the claim of involuntariness [of her plea] has been procedurally defaulted."); *Waucaush v. United States*, 380 F.3d 251, 254 (6th Cir. 2004) ("Waucaush, however, did not challenge the intelligence of his plea on direct appeal, and the Court held in *Bousley* that 'even the

voluntariness and intelligence of a guilty plea can be attacked on collateral review only if first challenged on direct review.'").

In any event, in analyzing the merits of this claim, Owenby's allegations directly contradict his sworn testimony before the District Court at the change of plea hearing and at sentencing. He never claimed a lack of understanding of the charges. Contrary to that, he admitted under oath that not only he understood the elements of the offense, but agreed to the specific conduct that formed the basis of his plea. Moreover, he does not identify now what facts he even disputes that formed the basis of the plea. He only professes ignorance and that the plea, as a consequence of that ignorance, "was false." That simply is not sufficient. Accordingly, this claim is meritless and is therefore DENIED.

### 8. Claim Eight - "Ineffective Assistance of Counsel - Duress or Coercion"

Owenby also claims "Ineffective assistance of counsel – duress or coercion." [Doc. 323, *Initial Motion,* pg. 6]. When asked for any grounds that had not been previously presented in federal court, Owenby claimed "duress or coercion." [Doc. 334, pg. 6]. He, however, did not provide any other information to support or explain that allegation. When a defendant files a § 2255 motion, he must set forth facts which entitle him to relief. *Green v. Wingo*, 454 F.2d 52, 53 (6th Cir. 1972). Here, Owenby fails to set forth any facts or claims that support this generic claim. In any event, at the change of plea hearing, the District Court asked Owenby "has any person, including an officer or an agent of the Government put any pressure on you, either mental or physical, to force you to plead guilty?" [Doc. 331, *Transcript,* pg. 9]. His response "No, sir." *Id.* He is bound by his sworn testimony. Accordingly, this claim is without merit and is therefore DENIED.

### 9. Claim Nine - Pretrial incarceration conditions

Owenby challenges the conditions of his pretrial incarceration. He asserts that the conditions in the local jails fall short of federal standards, and that he developed additional health issues as a direct result. In response, the Government contends § 2255 does not provide for relief for such a claim and should therefore be denied.

Relief under § 2255 is limited to: (1) errors involving lack of jurisdiction; (2) constitutional violations; and (3) those non-constitutional errors constituting "fundamental defect[s] which inherently result[] in a complete miscarriage of justice." *Reed v. Farley*, 512 U.S. 339, 348-49 (1994). It is well-established that claims involving "the conditions of . . . confinement rather than the validity of [a] conviction or sentence" are not cognizable under § 2255." *Johnson v. United States*, 76 F.3d 379 (Table), at *2 (6th Cir. 1996) (citing *United States v. Jalili*, 925 F.2d 889, 893-94 (6th Cir. 1991)). Accordingly, this claim is without merit and is therefore DENIED.

### 10. Claim Ten – Minimal Role in the offense

Owenby cavalierly mentions "minimal role in the offense" [Doc. 334, *Amended Motion,* pg. 6]. What he means by that is not clear. Presumably, he means that he received ineffective assistance of counsel for not raising this as an issue. This claim is also without merit. Owenby did not object to Probation's conclusion that he was not entitled to any reduction for his role in the offense [PSR at ¶¶ 40, 46]. That said, "an attorney's failure to object to an error in the PSR's calculation of the guidelines—if left uncorrected by the district court—can be grounds for finding deficient performance." *Howard v. United States*, 743 F.3d 459, 464 (6th Cir. 2014). However, in this case, any failure to object was not error on behalf of his counsel.

U.S.S.G. § 3B1.2 provides for a reduction in the offense level based on a defendant's role in the offense. Specifically, it provides as follows:

Based on the defendant's role in the offense, decrease the offense level as follows:

(a) If the defendant was a minimal participant in any criminal activity, decrease by 4 levels.

(b) If the defendant was a minor participant in any criminal activity, decrease by 2 levels.

In cases falling between (a) and (b), decrease by 3 levels.

U.S.S.G. § 3B1.2.

"[T]he critical question in whether to grant a 'mitigating role' reduction is what role the defendant played in relation to others involved in the criminal enterprise." *United States v. Skinner*, 690 F.3d 772, 783 (6th Cir. 2012) (quoting *United States v. Henderson,* 307 Fed.Appx. 970, 983 (6th Cir. 2009). The Sixth Circuit has recognized that the role of courier in a drug distribution conspiracy is "critical" to the success of the conspiracy. *Id.*; *see also United States v. Williams*, 505 F. .App'x. 426, 428 (6th Cir. 2012) (finding defendant's role was not minor or minimal as he acted as a drug courier). In this case, the stipulated facts undercut Owenby's position. He admitted to traveling to various pain clinics and physicians across the state of Tennessee for the purpose of obtaining oxycodone. He admitted to engaging in a number of specific transactions involving distributing oxycodone to various co-defendants. [Doc. 141, *Plea Agreement*, pg. 3-6]. He admitted to purchasing over 1,000 dose units of 30 milligram oxycodone tablets from a number of different sellers. He admitted he was responsible for 176,240 milligrams of oxycodone. His involvement in this conspiracy was extensive and does not warrant an adjustment based on his role in the offense under U.S.S.G. § 3B1.2. It was not error for his counsel not to object. This claim is also without merit and is DENIED.

17

## III.    CONCLUSION

The Court finds that an evidentiary hearing is necessary to resolve whether Owenby specifically requested his attorney to file an appeal.    Timothy W. Hudson, a member of the CJA Panel, will be appointed to serve as counsel for Owenby under the provisions of 18 U.S.C. § 3006A on this limited issue, as the Court finds Defendant financially qualified for the appointment of counsel based on his affidavit filed in the initial criminal proceedings.  All other grounds raised in Owenby's § 2255 motion are without merit and will be denied.

An order consistent with this opinion will be entered.


ENTER:


_____
        s/ Leon Jordan
United States District Judge